Randy J. Harvey, OSB #116714
Email: randy@elpnw.com
EMPLOYMENT LAW PROFESSIONALS
NORTHWEST LLC
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-1404

Attorney for Plaintiff James McLaughlin

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JAMES MCLAUGHLIN,<br><br>Plaintiff,<br><br>v.<br><br>DESCHUTES COUNTY, an Oregon political subdivision; and TY E. RUPERT, individually and in his official capacity as Sheriff of Deschutes County,<br><br>Defendants. | Case No. 6:26-CV-________<br><br>COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF<br><br>42 U.S.C. § 1983 — FIRST AMENDMENT RETALIATION<br><br>FILING FEE: $405<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

1.

This case concerns the use of a sheriff's public office against the employee who became his electoral opponent. Lieutenant James McLaughlin exercised protected speech, political association, and the right to seek elective office. Sheriff Ty E. Rupert then used or set in motion

the employment, investigative, disciplinary, and communications powers of Deschutes County to burden that protected activity.

2.

McLaughlin served the Deschutes County Sheriff's Office for nearly two decades and rose through operational, investigative, training, and supervisory assignments to lieutenant. Long before this election, he spoke as a citizen about DCSO leadership and command culture, supported a candidate for sheriff, supported employee organizing, and participated in labor proceedings. In June 2024, he placed the County on written notice that DCSO command had retaliated against protected speech and association.

3.

After learning that McLaughlin intended to run for sheriff, Rupert urged him to defer his candidacy and proposed a future path to the office. Rupert later called McLaughlin into his office, told him that he knew what McLaughlin wanted, and invited him to identify the position or authority Rupert could provide. McLaughlin declined the offers and announced his candidacy against Rupert on January 26, 2026.

4.

DCSO then reduced McLaughlin's authority, access, and supervisory role; proposed a schedule change directed at time available for his off-duty campaign; excluded him from decisions within his own division; placed him on administrative leave; expanded an internal investigation; and publicly deployed disputed accusations bearing directly on honesty, integrity, and fitness to serve as sheriff.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

5.

The First Amendment did not prevent DCSO from investigating legitimate misconduct. It did prevent Rupert and the County from selecting, escalating, timing, and publicly using employment action to punish protected speech or tilt an election. The County's own records now connect McLaughlin's candidacy to the decision to disclose his internal-affairs records, confirm that Rupert hired the investigator and remained the final decisionmaker, and show that an unfinished termination recommendation reached the press before it was served on McLaughlin or his counsel.

## JURISDICTION AND VENUE

6.

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the First Amendment, as applied to state and local government through the Fourteenth Amendment, and 42 U.S.C. § 1983.

7.

This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4).

8.

Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. Equitable relief and damages are available under 42 U.S.C. § 1983.

9.

Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because both Defendants reside in Oregon and a substantial part of the events and omissions occurred in Deschutes County, Oregon.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

10.

Divisional venue lies in the Eugene Division under District of Oregon Local Rule 3-2 because the events occurred principally in Deschutes County.

11.

The Court has personal jurisdiction over Rupert because he resides in Oregon and allegedly committed the acts described below in Oregon while exercising authority for Deschutes County.

12.

McLaughlin need not exhaust state administrative remedies before pursuing his claims under section 1983. See *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982).

**PARTIES**

13.

Plaintiff James McLaughlin ("McLaughlin") is an adult resident of Deschutes County, Oregon. He began working for Deschutes County through DCSO in November 2007 and holds the rank of lieutenant.

14.

Defendant Deschutes County ("County") is an Oregon political subdivision capable of being sued. References to DCSO identify the Sheriff's Office component of County government and the conduct of County officials; DCSO is not named as a separate defendant.

15.

Defendant Ty E. Rupert ("Rupert") is the interim Sheriff of Deschutes County and is sued in his individual capacity. He acted under color of state law and under the actual or asserted authority of his public office at all material times.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

16.

Rupert is sued individually for damages and in his official capacity only for prospective relief. Deschutes County is named directly for municipal liability.

## FACTUAL ALLEGATIONS

### McLaughlin Built a Nineteen-Year Record in Operational, Investigative, and Supervisory Service

17.

McLaughlin began working for DCSO in November 2007 as a law-enforcement technician.

18.

He became a patrol deputy in approximately 2008 and served approximately four or five years in patrol.

19.

He then served approximately seven years in detective assignments involving undercover work with a Drug Enforcement Administration task force, criminal investigations, street crimes, and narcotics investigations.

20.

DCSO promoted McLaughlin to sergeant in approximately 2019 and assigned him as a detective sergeant at the beginning of 2023.

21.

DCSO promoted McLaughlin to lieutenant in approximately February 2025.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

22.

McLaughlin's service included SWAT leadership, the honor guard, field training, classroom instruction, state tactics instruction, major criminal investigations, and multiagency operations.

23.

As lieutenant, McLaughlin supervised employees and operational units within a defined chain of command. He implemented law, County rules, DCSO policy, and command directives.

24.

McLaughlin did not formulate Rupert's campaign platform, serve as Rupert's political adviser, act as a confidential political aide, or speak for Rupert on political matters.

25.

McLaughlin lacked final authority to create department-wide policy, set the County budget, discharge County employees, or make final disciplinary decisions.

26.

McLaughlin could perform his operational and supervisory duties professionally despite political disagreement with Rupert.

27.

Before the challenged conduct, Defendants identified no actual disruption caused by McLaughlin's off-duty protected speech, political association, or candidacy.

28.

The challenged actions followed nearly nineteen years of progressively responsible service, not a sustained history of marginal performance or disregard for DCSO's mission.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

**DCSO Knew of McLaughlin's Protected Speech and Association Before the Current Election**

29.

Beginning in late 2023 and continuing through 2024, McLaughlin supported Sergeant Kent Vander Kamp's ("Vander Kamp") campaign for sheriff.

30.

McLaughlin made off-duty social-media statements supporting Vander Kamp in January and February 2024 and formally endorsed him in approximately March 2024.

31.

On April 25, 2024, McLaughlin addressed approximately one hundred people at a Vander Kamp campaign event.

32.

McLaughlin spoke as a citizen and voter about DCSO command culture, leadership, management, and decision-making.

33.

The management of a public law-enforcement agency and the qualifications of candidates seeking to lead it are matters of public concern.

34.

On February 22, 2024, McLaughlin signed a petition supporting efforts by DCSO sergeants to join the employee association.

35.

McLaughlin agreed to participate in proceedings before the Oregon Employment Relations Board concerning the organizing effort.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

36.

McLaughlin also agreed to participate in Deputy Michael Mangin's arbitration against the sheriff.

37.

This protected speech and association occurred outside McLaughlin's ordinary duties and addressed agency leadership, employee organization, and public safety administration.

38.

Command personnel knew about the protected activity.

39.

McLaughlin received warnings that command was watching him and that his political activity could affect his career or promotional prospects.

40.

Contemporaneous December 2023 records described command concern about McLaughlin's support for Mangin and questioned McLaughlin's loyalty to command's disciplinary position.

41.

On May 29, 2024, Captain Paul Garrison served McLaughlin with notice of an internal-affairs matter.

42.

When McLaughlin questioned the timing, Garrison said that matters would be fine after "silly season" ended, a reference McLaughlin understood to mean the ongoing sheriff election.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

43.

On June 7, 2024, McLaughlin served a written tort claim notice through counsel asserting retaliation and infringement of his speech rights. The County received the notice on approximately June 10, 2024.

44.

The notice gave County Counsel, County leadership, and DCSO actual written notice that using command authority against an employee's protected political activity created a constitutional risk.

45.

The County therefore entered the 2025 and 2026 events already aware of McLaughlin's protected speech and his prior claim that DCSO had punished it.

46.

The 2023 and 2024 events are pleaded as background, notice, motive, and municipal-liability evidence, not as a request for damages for any discrete time-barred act.

**Rupert Repeatedly Pressed McLaughlin to Stay Out of the Race**

47.

On May 8, 2025, before Rupert became interim sheriff, Rupert and his wife invited McLaughlin and his wife, Torrey McLaughlin, to their home.

48.

Rupert sought McLaughlin's political support for Rupert's anticipated appointment as interim sheriff.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

49.

McLaughlin disclosed that he intended to run for sheriff and was considering seeking the interim appointment himself.

50.

Rupert responded, in substance, "What if I take the interim position and prepare you for sheriff?"

51.

In context, Rupert proposed that McLaughlin stand down from the present contest, allow Rupert to serve as interim sheriff and pursue the intervening election, and later receive Rupert's support or assistance in becoming sheriff.

52.

Rupert further represented that the County commissioners would not appoint an interim sheriff who planned to run in the ensuing election, said he had spoken with at least one commissioner, discouraged McLaughlin from contacting the commissioners, and invoked his relationship with Commissioner Tony DeBone.

53.

McLaughlin rejected the proposed succession arrangement and later met with the commissioners. None told him that a prospective candidate would be categorically excluded from the interim appointment.

54.

In approximately August 2025, after becoming interim sheriff, Rupert summoned McLaughlin to a private meeting and offered him an operational or administrative lieutenant assignment.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

55.

McLaughlin declined and said that he was satisfied serving as detective lieutenant.

56.

Rupert directed McLaughlin to think about it and "let me know where you want to be." McLaughlin contemporaneously reported the exchange to Sergeant Chris Barringer.

57.

During the same period, Lieutenant John Jernigan told McLaughlin that Rupert had sent him to discuss the possibility that Jernigan and McLaughlin would serve together in Professional Standards.

58.

In approximately September 2025, Rupert again met privately with McLaughlin and stated, "I know what you want." When McLaughlin said he did not understand, Rupert repeated, "Come on, I know what you want," and again asked where McLaughlin wanted to be.

59.

McLaughlin again declined to request any promotion, assignment, authority, or accommodation and contemporaneously told Barringer about the encounter.

60.

Before Rupert publicly filed as a candidate in approximately December 2025, Rupert met with McLaughlin again and asked, "What do you want?" McLaughlin did not name a governmental benefit and did not abandon his intention to run.

61.

Torrey McLaughlin witnessed the May 8 conversation. Barringer can corroborate McLaughlin's contemporaneous reports of the later encounters.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

62.

The repeated sequence supplied Rupert with direct knowledge of McLaughlin's protected political plans: Rupert proposed a delayed path to the office, offered present professional opportunities, asked McLaughlin to name what he wanted, and learned each time that McLaughlin would not withdraw.

**McLaughlin's Announcement Made Rupert Both His Supervisor and Electoral Opponent**

63.

On January 26, 2026, McLaughlin publicly announced that he would run for Deschutes County Sheriff against Rupert in the November 2026 election.

64.

McLaughlin's candidacy, off-duty campaign speech, political association, and criticism of DCSO leadership were protected speech and activity under the First Amendment.

65.

McLaughlin observed the boundary between public work and political campaigning and conducted campaign activity off duty.

66.

After the announcement, Rupert simultaneously controlled or materially influenced McLaughlin's assignments, schedule, access to information, administrative leave, investigation, discipline, agency records, and official public communications while personally benefiting from damage to McLaughlin's candidacy.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

67.

The conflict was concrete, not theoretical. Accusations of dishonesty and unfitness against Rupert's subordinate were also campaign information against Rupert's opponent.

68.

Defendants established no meaningful recusal, screening, or neutral-review process separating Rupert's electoral interest from employment, investigative, disciplinary, or public-communications decisions affecting McLaughlin.

69.

Rupert remained involved. He hired the outside investigator, retained ultimate disciplinary authority, and remained the official to whom command directed its recommendation.

70.

The First Amendment permitted Rupert to campaign against McLaughlin. It did not permit him to use the machinery of the Sheriff's Office to make that campaign easier.

**DCSO Reduced McLaughlin's Authority, Access, and Supervisory Role**

71.

After McLaughlin's candidacy became known, Interim Captain Brian Husband ("Husband") told him that command believed he was working too many hours and proposed changing his regular schedule from four working days to five.

72.

McLaughlin explained that adding a fifth workday did not logically address excessive hours and would remove a regular Friday he used for lawful off-duty campaigning.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

73.

McLaughlin told Husband that the proposal appeared designed to reduce campaign availability, while also stating that he would comply if ordered.

74.

Husband did not return to the issue, and DCSO did not implement the five-day schedule.

75.

The proposal remains probative because command targeted the off-duty time McLaughlin used for protected campaign speech after he refused Rupert's overtures.

76.

DCSO removed McLaughlin from detective budget meetings in which he had participated.

77.

DCSO also excluded him from SWAT budget meetings despite his SWAT leadership responsibilities.

78.

Those exclusions restricted institutional, operational, and financial information associated with the agency McLaughlin was seeking to lead.

79.

Other lieutenants continued receiving budget information.

80.

Husband required McLaughlin to check in whenever he left the office, a movement-reporting requirement not imposed on comparable command personnel.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

81.

Command encouraged detectives to bypass McLaughlin and communicate directly with Husband or Rupert about matters ordinarily proceeding through the division lieutenant.

82.

McLaughlin repeatedly asked Husband and Captain Mike Sundberg to stop command personnel from circumventing his supervisory role.

83.

Sergeants Chris Barringer and Jason Wall supported McLaughlin’s concern. Sundberg answered, in substance, that he could not stop the sheriff.

84.

Husband was appointed interim Detective Captain without advance notice to McLaughlin even though Husband became McLaughlin’s direct supervisor.

85.

McLaughlin learned of the appointment only after Husband corrected Barringer and identified himself as captain.

86.

Command said it withheld notice to avoid bothering McLaughlin during the Smith Rock investigation, even though that investigation had closed and command communicated with him about other matters during the same period.

87.

Rupert later told McLaughlin that he had tested Husband’s loyalty concerning leadership of the detective division and that Husband “passed.”



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

88.

Detectives within McLaughlin's division were selected, made permanent, or assigned anticipated departure dates without his knowledge or supervisory input.

89.

During a command process at Camp Rilea, DCSO selected Brandon Porter for a permanent detective position without involving McLaughlin, and participants were instructed not to discuss the selection process with him.

90.

Rupert dissolved DCSO's participation in a United States Marshals Service task force without advance notice to or input from McLaughlin despite McLaughlin's role as a senior DCSO leader and primary liaison for the task force.

91.

Sundberg raised rumors in front of SWAT members that SWAT could be disbanded without first involving McLaughlin in a command-level discussion despite McLaughlin's SWAT leadership role.

92.

These were completed losses of access, participation, authority, and professional standing, not merely threatened future harm.

## DCSO Command Expressly Viewed Employment Matters Through Their Effect on McLaughlin's Campaign



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

93.

On or before October 1, 2025, during a SWAT training attended by approximately fifteen people, Lieutenant Jay Minton ("Minton") became angry during a disagreement with McLaughlin.

94.

Minton slammed a table or chair, clenched his fists, approached McLaughlin, ordered him to "sit the fuck down," called him a "piece of shit" and a terrible leader, and said that he hoped McLaughlin would quit SWAT.

95.

McLaughlin remained calm. The two later apologized, embraced, and attempted to resolve the personal conflict. Minton stepped down from SWAT.

96.

Rupert later offered Minton an operational or administrative position. DCSO did not subject Minton to investigation, administrative leave, or public accusation comparable to the treatment imposed on McLaughlin.

97.

After a media inquiry concerning the incident, Sundberg told McLaughlin that the matter "could look very bad for your campaign" and demanded a prompt written memorandum.

98.

McLaughlin recalls being directed to provide the memorandum in printed form rather than by email.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

99.

The memorandum described a heated discussion and stated that no physical contact occurred. It did not recount every threatening word or movement later identified in McLaughlin's timeline.

100.

Sundberg reviewed the memorandum and told McLaughlin, "It's perfect."

101.

Sundberg's express campaign reference shows that command evaluated internal employment matters through their anticipated effect on McLaughlin's protected candidacy.

**The Trader Lane Operation Supplied the Pretext for Election-Year Discipline**

102.

On February 25, 2026, DCSO conducted a SWAT operation at a residence on Trader Lane to arrest Paul Akehurst ("Akehurst").

103.

McLaughlin participated in planning and in the SWAT command structure.

104.

DCSO had been attempting to arrest Akehurst on an out-of-area felony warrant. McLaughlin received information concerning prior flight, felony-elude conduct, possible drug activity, weapons, and the public danger of another vehicle pursuit.

105.

McLaughlin previously rejected using SWAT at another residence because uninvolved family members and children could have been placed at greater risk.


**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

106.

Captain Sundberg gave final authorization for SWAT deployment at Trader Lane.

107.

A Ring camera recorded a post-arrest conversation in which Deputy Mangin discussed possible additional charges and McLaughlin said words to the effect of, “Your vindictiveness knows no bounds. I love it.”

108.

McLaughlin acknowledged the remark from the beginning. He admitted that the wording was poor and could sound troubling without context.

109.

The remark was not an order to fabricate charges, retaliate, coerce anyone, destroy evidence, or engage in unlawful conduct.

110.

The surrounding discussion included rejection of additional charges and a decision to accept the existing result rather than escalate the matter.

111.

McLaughlin used sarcasm or hyperbole while attempting to temper an aggressive enforcement impulse, although a direct instruction would have been clearer and more professional.

112.

The recorded words were fairly subject to criticism. They were not proof that McLaughlin authorized fabricated charges or criminal conduct.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

113.

Defendants nevertheless used the remark to construct a broader public narrative involving dishonesty, concealment, coercion, misuse of SWAT, and unfitness for office.

**McLaughlin Addressed Hayes's Complaint and Denied Concealment**

114.

The day after the operation, Kelli Hayes ("Hayes") contacted McLaughlin about the search and the Ring recording.

115.

McLaughlin apologized for the remark and attempted to address her concerns.

116.

McLaughlin later acknowledged that the complaint should have been routed differently and that he would change aspects of the process if confronted with the same circumstances again.

117.

He did not retaliate against Hayes or Akehurst, direct anyone to suppress the recording, attempt to prevent lawful review, or authorize false charges.

118.

McLaughlin prepared a memorandum concerning the incident. DCSO later characterized the memorandum and his recollection of its preparation as misleading and dishonest.

119.

McLaughlin did not intentionally omit a material fact or knowingly make a false statement. The disputed issues turn on context, the questions asked, the records available, customary practice, memory, and intent.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

120.

Defendants converted disagreements over process, drafting, memory, and intent into official accusations of dishonesty during an election for the office McLaughlin sought.

**Rupert Initiated IA 2026-6 and Removed His Opponent from Active Command**

121.

Before DCSO formally served McLaughlin with IA 2026-6, Deschutes County Sheriff's Employees Association President David Crump ("Crump") told McLaughlin that McLaughlin, Mangin, and other employees were being criminally investigated.

122.

Crump said Rupert had instructed him not to disclose the information. Crump waited approximately one week before informing McLaughlin, and DCSO did not serve formal notice for approximately two or three more weeks.

123.

On June 5, 2026, DCSO placed McLaughlin on paid administrative leave and served notice of IA 2026-6.

124.

The notice charged McLaughlin with unprofessional comments, an improper search, mishandling of a citizen complaint, inappropriate or undocumented discipline, failure to disclose his involvement, dishonesty, failure to provide the Ring recording, participation in alleged coercion concerning the recording, and disobedience of an instruction involving the United States Marshals Service.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

125.

Those were accusations, not findings. Band had not yet interviewed McLaughlin.

126.

The accusations put McLaughlin's honesty, judgment, integrity, and fitness to serve as sheriff at issue while he was campaigning against Rupert.

127.

Administrative leave immediately stripped McLaughlin of active command, supervision, law-enforcement powers, credentials, equipment, systems access, SWAT responsibilities, unit responsibilities, and multiagency work.

128.

Rupert hired Jim Band to conduct the outside investigation.

129.

Band's effort to act independently did not remove Rupert and DCSO from the decisions to initiate the matter, frame and amend the allegations, place McLaughlin on leave, select and characterize evidence, recommend discipline, or determine what official information reached the public.

130.

On approximately June 8, 2026, Lorena Akehurst sent McLaughlin computer-aided dispatch notes reflecting that Rupert had directed a reporting party to contact him during the investigation.

131.

Rupert remained informed and involved while the County presented Band as an independent factfinder.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

132.

Rupert personally approved, directed, or set in motion the investigation and leave process and remained the official with ultimate authority over the proposed discipline.

**The County Made McLaughlin's Protected Candidacy the Reason for Disclosure**

133.

While IA 2026-6 remained pending, DCSO and County personnel received public-records requests for investigation-related material.

134.

In written responses to requests submitted in June 2026, the County first identified multiple statutory exemptions applicable to the personnel and internal-affairs records.

135.

The County then singled out McLaughlin by title and protected political status: "Sheriff candidate Lt. James McLaughlin."

136.

In the same passage, the County announced that McLaughlin-specific records would be disclosed because the public interest required disclosure.

137.

The County's own written explanation therefore placed McLaughlin's protected candidacy directly beside the governmental decision to disclose his employment records.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

138.

The same broad investigation involved other DCSO employees who were also placed on leave. The County withheld or redacted their identities while identifying McLaughlin and producing records specific to him.

139.

The distinction was not accidental. The County made a conscious, candidate-specific disclosure decision.

140.

OPB published detailed reporting on July 21 and 22, 2026, describing accusations of a cover-up, coercion, dishonesty, misuse of SWAT authority, and suppression of the Ring recording.

141.

Band did not conduct McLaughlin's principal investigative interview until July 28, 2026.

142.

The County thus released serious accusations against Rupert's electoral opponent before the factfinder heard that opponent's account.

143.

Rupert publicly cautioned that no conclusions should be drawn before completion of the investigation, while DCSO's disclosure predictably invited those conclusions during the active campaign.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

144.

The constitutional injury here does not depend on proving that every record was exempt from Oregon disclosure law. It lies in using McLaughlin's protected candidacy as a reason to select, accelerate, differentiate, and publicly deploy the employment process against him.

**McLaughlin Answered the Accusations Without Receiving the Evidence**

145.

On July 14, 2026, DCSO notified McLaughlin that Band would interview him on July 28.

146.

On July 28, accompanied by counsel, McLaughlin submitted to more than three hours of recorded questioning.

147.

DCSO required McLaughlin to answer questions about text messages, memoranda, operational plans, reports, body-camera footage, a search warrant, drone footage, and accusations supplied by other lieutenants.

148.

Before the interview, DCSO gave McLaughlin none of that evidence. It provided only the notices of allegations.

149.

McLaughlin therefore answered from recollection while the investigator and DCSO possessed the documents, recordings, and digital information used to test that recollection.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

150.

McLaughlin denied directing fabricated charges, destroying or suppressing evidence, coercing Akehurst, concealing a debrief, disobeying a Marshals Service instruction, or intentionally lying.

151.

He supplied context, identified witnesses and records, accepted responsibility for poor wording and process issues, and distinguished those concessions from intentional dishonesty or unlawful conduct.

152.

Near the close of the interview, McLaughlin explained that official public statements had been his primary source of information and painted a materially different picture from the questions Band actually asked.

153.

McLaughlin specifically denied the public accusation that he debriefed Akehurst and coerced him to remove Ring footage.

154.

Band responded that he had not asked about certain publicly circulated accusations because other evidence had already resolved them.

155.

Band told McLaughlin that his animated demeanor did not diminish his credibility and was consistent with how an innocent person accused of lying might respond.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

156.

As of the filing of this Complaint, McLaughlin has not received the complete evidence used against him, including the full investigative file and supporting materials.

**Objective Evidence Disproved or Narrowed Material Parts of the Public Narrative**

157.

Video evidence disproved the accusation that a rifle had been placed against Akehurst's back.

158.

Akehurst did not substantiate the jail-housing accusation, and jail records did not support it as publicly described.

159.

The revised investigation found the excessive-force allegation unfounded.

160.

It also found the jail-housing allegation and an inaccurate-report allegation unfounded.

161.

The investigation did not sustain allegations that personnel exceeded the warrant's scope or disobeyed an order to cease work with the Marshals Service.

162.

The pre-disciplinary memorandum initially produced with the related materials concerned Mangin, not McLaughlin.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

163.

DCSO did not give these exculpatory or narrowing conclusions the same public prominence it gave the accusations.

**DCSO Added Allegations While Withholding the Completed Record**

164.

McLaughlin began protected medical leave effective August 26, 2026.

165.

On September 3, DCSO served an amended notice adding two alleged violations and scheduling a further Band interview for September 9.

166.

The amended allegations asserted that McLaughlin's disciplinary memorandum was misleading or omitted material information and that his statements concerning the memorandum were untruthful.

167.

The September 3 notice stated that the investigation would determine whether the new allegations violated policy and whether further action should be taken.

168.

The September 3 notice did not state that the investigation had closed, disclose completed findings, announce a termination recommendation, or initiate a pretermination meeting.

169.

The follow-up interview did not occur because McLaughlin remained on protected medical leave.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

170.

DCSO provided McLaughlin no additional evidence with the amended allegations.

171.

McLaughlin received no meaningful opportunity beyond the July 28 interview to answer the evidence, the sustained findings, or a termination recommendation before those matters entered the public record.

**The County Claimed Further Disclosure Would Interfere, Then Supplied an Unserved Termination Draft to the Press**

172.

On September 16, 2026, the Deschutes County District Attorney sent County counsel a letter addressing OPB's request for records generated after August 13.

173.

The September 16 letter memorialized the County's position that the later records were exempt and that disclosure would interfere with the unfinished investigation while McLaughlin remained on protected leave and unavailable for an interview.

174.

The District Attorney had not reviewed the specific records and did not make a record-specific exemption determination in that letter.

175.

The District Attorney instructed the County to review each record, identify any concrete interference, segregate exempt from nonexempt material, and disclose portions not properly withheld.


**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

176.

By September 22 and 23, OPB possessed and reported Band's sustained findings and the command recommendation that McLaughlin be terminated.

177.

The County later produced a 507-page binder identifying the records it had released to OPB.

178.

The binder confirms that the press received a draft titled "Notice of Proposed Discipline and Pre-disciplinary meeting with Sheriff Ty Rupert regarding Internal Investigation 2026-6."

179.

The draft was not a completed or served employee notice. It contained a tentative September 1 date surrounded by editing marks, a notation that the date remained open depending on McLaughlin's availability, blank fields for the pre-disciplinary meeting, and an unsigned employee-receipt line.

180.

Although the draft was labeled "Hand Delivered," neither McLaughlin nor his counsel had received it before the press obtained its contents.

181.

The draft states that Rupert hired Band to conduct IA 2026-6.

182.

The draft states that Captains Brian Husband and Michael Gill, Professional Standards Manager Lieutenant Jeff Sundberg, and Lieutenant Blair Barkhurst met, reviewed Band's work, and affirmed the findings.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

183.

The draft sustained allegations concerning McLaughlin's Ring-camera remark, complaint handling, completion and dating of the disciplinary memorandum, and alleged untruthfulness. It did not sustain the search-scope, coercion, or Marshals Service allegations.

184.

The draft simultaneously stated that Band had identified additional alleged untruthfulness and that those new allegations remained under further investigation.

185.

Notwithstanding the unfinished additional investigation, the draft informed McLaughlin that command was recommending termination to Rupert and that Rupert would make the final decision after a pre-disciplinary meeting.

186.

The binder included Band's reports but did not include the complete July 28 interview transcript that would show McLaughlin's full answers, explanations, concessions, denials, and identification of favorable evidence.

187.

The public therefore received the accusation, the sustained findings, and the proposed punishment without the complete contextual record and before the County delivered the operative package to the employee expected to answer it.

188.

The County's sequence also contradicted its September 16 position that disclosure of later records would interfere with the unfinished investigation. The shifting position is evidence of selectivity and pretext even if Oregon law permitted disclosure of particular portions.


**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

189.

The County's own documents eliminate any suggestion that the information imbalance rested only on a reporter's characterization. The government gave the press an unfinished termination document that it had not served on McLaughlin.

**The Disclosure Produced Foreseeable Law-Enforcement and Electoral Harm**

190.

The September reporting branded McLaughlin with official findings of dishonesty, lack of integrity, misconduct, and insubordination while he remained Rupert's opponent.

191.

After the County's production, the District Attorney's Office opened a Brady/Giglio review based on the Band interview transcript posted online by a media outlet.

192.

The District Attorney's decision to review potential impeachment material may reflect the prosecutor's independent legal obligations. The opening of a review is not a final finding that McLaughlin was dishonest or that disclosure is required in any particular criminal case.

193.

The Brady/Giglio review nevertheless illustrates the foreseeable professional consequence of the County's decision to publish an unfinished employment record: the publication threatened McLaughlin's credibility as a witness, his ability to perform law-enforcement work, and his future career before any final discipline or adjudication.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

194.

The same publication damaged McLaughlin's campaign. Persons who previously agreed to distribute campaign literature or coordinate campaign efforts withdrew that support after the reports.

195.

After the media releases, Deschutes Democrats withdrew an endorsement McLaughlin had already won, and volunteers who had agreed to distribute his literature declined to associate with his campaign.

196.

The reports also affected professional relationships and a contemplated speaking opportunity at an International Association of Chiefs of Police conference.

197.

McLaughlin had limited time before the November election and lacked the complete file needed to answer the County's official accusations on equal terms.

**County and DCSO Rules Confirmed the Boundary Defendants Crossed**

198.

Deschutes County Personnel Rule 1.010 requires fair personnel administration with regard for employee privacy and constitutional rights.

199.

Rule 1.010 protects employees from political coercion and prohibits use of an official position to interfere with or affect an election or nomination for office.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

200.

Rule 1.050 prohibits discrimination in employment, advancement, discipline, or discharge based on political affiliation, among other protected classifications.

201.

Rules 8.010 and 8.020 require fair, ethical, and professional conduct, avoidance of actual or apparent conflicts, and no misuse of official position for special privileges or benefits.

202.

Rule 8.030 recognizes First Amendment protection for employee political activity and separates on-duty public work from campaign activity.

203.

DCSO Media Relations Policy 3.70 requires public information to be released without partiality and as objectively as possible, routes internal-investigation inquiries through the public-information function, and requires the Sheriff's express permission for release of internal-investigation information except as law otherwise requires.

204.

DCSO Sheriff's Office Administration Policy 2.02 identifies the Sheriff as the Office's chief executive officer and spokesperson and states that final authority and responsibility for decisions will always rest with the Sheriff.

205.

DCSO Discipline Policy 3.03 treats internal-affairs records as confidential to the extent allowed by law and routes external requests through the Sheriff and command or legal review.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

206.

Policy 3.03 also contemplates that an employee will receive the proposed discipline, investigative report, supporting information, time to submit mitigating or exculpatory material, and an opportunity to meet before final discipline.

207.

DCSO Complaint Review Policy 3.01 addresses confidentiality, representation, interview records, completion of investigative reports, just cause, and avoidance of unnecessary public embarrassment or humiliation.

208.

The County invoked policy, honesty, neutrality, and institutional integrity against McLaughlin while disregarding its own rules against political coercion, election interference, partial public communication, conflicts of interest, and misuse of official authority.

209.

The policy departures are not pleaded as stand-alone constitutional violations. They are evidence of motive, pretext, actual notice, selective enforcement, personal participation, objective unreasonableness, and municipal responsibility.

## ***Kozowski*** **Gave the Same County Actual Notice of the Same Constitutional Danger**

210.

Before these events, Deschutes County and DCSO defended *Kozowski v. Nelson*, No. 6:18-cv-00275-AA, in this Court.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

211.

Sergeant Eric Kozowski claimed that DCSO increased scrutiny, opened or revived investigations, removed professional opportunities, placed him on administrative leave, accused him of untruthfulness, and terminated him after he ran against the incumbent sheriff and criticized DCSO management.

212.

The defendants admitted material parts of that chronology, including Kozowski's prior satisfactory performance, multiple post-candidacy investigations, repeated interviews, administrative leave, and an untruthfulness referral that did not result in placement on a Brady list.

213.

A federal jury found that Deschutes County and the former sheriff unlawfully terminated Kozowski for exercising First Amendment rights to run for office and speak on matters of public concern.

214.

*Kozowski* did not adjudicate McLaughlin's facts and is not binding appellate precedent.

215.

Instead, *Kozowski* gave the County concrete institutional notice that combining electoral rivalry with investigation, administrative leave, honesty accusations, and employment action against an internal candidate creates an obvious First Amendment risk.

216.

McLaughlin's 2024 notice supplied additional, employee-specific warning before Rupert exercised authority over him as an electoral opponent.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

**Rupert's Final Policymaking Decisions Made the Retaliation County Action**

217.

The constitutional injury resulted from official County decisions and omissions, not respondeat superior.

218.

ORS 206.010 identifies the sheriff as the County's chief executive law-enforcement officer, and ORS 206.210 authorizes the sheriff to organize the work of the Sheriff's Office, assign duties to departments and divisions, and coordinate the work of assistants, officers, deputies, and employees.

219.

County Personnel Rule 4.080 preserves the Sheriff's statutory authority over the Office, subject to governing law and applicable agreements. DCSO Policy 2.02 further states that final authority and responsibility for DCSO decisions always rests with the Sheriff.

220.

DCSO Media Relations Policy 3.70 requires the Sheriff's express permission before internal-investigation information is released unless disclosure is otherwise required by law. DCSO Discipline Policy 3.03 likewise routes external requests for internal-affairs records through the Sheriff, command, or legal review.

221.

These sources made Rupert the final County policymaker, or establish that the County delegated final policymaking authority to him, for the particular DCSO subjects at issue: organization of work, assignments and access, administrative leave, initiation and scope of



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

internal investigations, DCSO discipline, and authorization of DCSO communications concerning internal investigations.

222.

According to the governing policies and the County's own records, Rupert's decisions on those DCSO subjects were final or were not subject to meaningful review by another County official.

223.

Rupert exercised that authority when he hired Band; approved, directed, or set in motion IA 2026-6 and McLaughlin's administrative leave; maintained control over the organization of McLaughlin's work and access; and remained the official designated to make the final DCSO disciplinary decision.

224.

Those official decisions caused completed adverse actions, including removal from active command, loss of authority and access, administrative leave, lost overtime and training opportunities, and use of the internal-affairs process against McLaughlin during the election.

225.

Because Policy 3.70 required Rupert's express permission for the release of internal-investigation information, McLaughlin alleges on information and belief that Rupert knew what McLaughlin-specific materials DCSO proposed to release, knew that the investigation and disciplinary process remained unfinished, and expressly authorized the release.

226.

The County also acted through the official or officials designated to make final public-records and legal-review decisions. Those officials issued or approved the written, candidate-



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

specific decision to disclose records concerning ‘Sheriff candidate Lt. James McLaughlin’ after reviewing exemptions and the asserted public interest.

227.

The candidate-specific production was therefore an official County decision made through the County’s authorized records process, not the random or unauthorized act of a line employee. That decision directly caused the public dissemination and resulting professional and electoral harm described above.

**Final-Policymaker Ratification Provides an Alternative Basis for County Liability**

228.

To the extent Husband, Gill, Sundberg, Barkhurst, Professional Standards personnel, records personnel, or other subordinates initially selected, framed, or carried out any challenged action, Rupert and the County’s designated records decisionmaker possessed final authority over the relevant subject.

229.

Rupert knew McLaughlin was his electoral opponent, knew of the 2024 retaliation notice, knew that additional allegations remained under investigation, and knew that the draft termination notice had not been served on McLaughlin or counsel. With that knowledge, he specifically and deliberately approved the challenged DCSO actions and their campaign-linked basis, including the release authorized under Policy 3.70.

230.

The County official who made the final public-records determination likewise knew the election context, the County’s candidate-specific rationale, the unfinished status of the process,



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

and the unequal information provided to McLaughlin and the press, yet specifically and deliberately approved the production and its stated basis.

231.

These allegations concern affirmative authorization and approval of the challenged acts and the grounds for them, not merely a failure to investigate, discipline, or overrule a subordinate after the fact.

232.

Each final decision and ratification was a direct and moving force behind the First Amendment injury. *Kozowski* and McLaughlin's 2024 notice are pleaded as evidence of actual institutional notice and deliberate choice, not as a substitute for identifying the County decision that caused McLaughlin's injury.

**INJURIES**

233.

Defendants' conduct removed McLaughlin from active command and stripped supervisory authority, decision-making power, law-enforcement duties, systems access, credentials, equipment, SWAT responsibilities, and multiagency work.

234.

The affected duties included supervision of employees, digital-forensics supervision, the concealed-handgun-license unit, the evidence unit, peer support, the Sexual Assault Response Team, and multi-jurisdictional responsibilities.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

235.

Although DCSO continued base pay during administrative leave, McLaughlin lost overtime, training opportunities, and associated compensation.

236.

He incurred out-of-pocket legal expenses because lieutenants were not represented by the employee association.

237.

The official publication of dishonesty, lack of integrity, coercion, concealment, and insubordination findings damaged McLaughlin's law-enforcement reputation and impaired his ability to communicate with voters on equal terms.

238.

The publication triggered or contributed to a Brady/Giglio review, threatened certification and future employment consequences, damaged professional relationships, and impaired a contemplated national speaking opportunity.

239.

Campaign volunteers and political supporters withdrew assistance, donors and voters expressed concern, and McLaughlin lost electoral support during the limited period remaining before the election.

240.

McLaughlin experienced emotional distress, anxiety, humiliation, and health consequences.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

241.

The retaliation chilled and burdened protected speech and association, although McLaughlin continued his campaign.

242.

McLaughlin faces an ongoing threat of termination, additional publication, further professional consequences, and continued use of County authority to burden his protected candidacy.

## FIRST CLAIM FOR RELIEF

### First Amendment Retaliation under 42 U.S.C. § 1983 against Rupert and Deschutes County

243.

Plaintiff realleges and incorporates by reference paragraphs 1 through 242 as though fully set forth herein.

244.

Rupert acted under color of state law. His conduct and the official decisions of final County policymakers constituted governmental action.

245.

McLaughlin's candidacy, campaign speech, political association, support for Vander Kamp, support for employee organizing and labor proceedings, and citizen speech concerning DCSO leadership, command culture, management, and public safety were protected by the First Amendment.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

246.

McLaughlin engaged in that protected speech and association as a private citizen, not pursuant to his ordinary official duties.

247.

McLaughlin was not a policymaking or confidential employee for whom personal political loyalty to Rupert was an appropriate job requirement. His duties were operational and supervisory, constrained by law, policy, and chain of command, and did not make him Rupert's political adviser or extension.

248.

Rupert knew of McLaughlin's protected speech and intended candidacy no later than May 8, 2025. The County knew of McLaughlin's earlier protected activity and retaliation concerns no later than June 2024.

249.

Defendants subjected McLaughlin to adverse action by reducing access and supervisory authority; excluding him from budget, staffing, task-force, and operational decisions; imposing unusual reporting requirements; removing him from active command; placing him on administrative leave; depriving him of overtime and training opportunities; escalating IA 2026-6; advancing findings and a termination recommendation; and publicly disseminating stigmatizing employment material during the election.

250.

The proposed five-day schedule, although not implemented, forms part of the retaliatory sequence because command directed it at off-duty time McLaughlin used for protected campaign speech.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

251.

Each completed action, and the actions cumulatively, would deter a person of ordinary firmness from running against an incumbent sheriff, criticizing agency leadership, associating with political and labor groups, or continuing protected campaign speech.

252.

McLaughlin's protected speech, association, and candidacy were substantial or motivating factors in the challenged actions.

253.

Direct motive evidence includes Rupert's succession proposal, his repeated professional overtures, McLaughlin's refusals, Sundberg's statement that an internal matter could look bad for McLaughlin's campaign, Rupert's statement that Husband passed a loyalty test, and the County's written identification of McLaughlin's candidacy when explaining why his records would be disclosed.

254.

Circumstantial motive evidence includes timing, reductions in authority following Rupert's knowledge and McLaughlin's announcement, selective treatment of comparable personnel, departures from ordinary supervisory and confidentiality practices, the failure to create conflict safeguards, shifting public-records positions, and delivery of an unfinished termination document to the press before the employee.

255.

Defendants' stated interests in integrity, public safety, complaint investigation, transparency, discipline, and public confidence do not justify using protected candidacy as a



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

reason for unequal treatment, election-year escalation, selective disclosure, or adverse public messaging.

256.

McLaughlin's protected activity caused no identified operational disruption. He campaigned off duty and remained capable of performing his law-enforcement responsibilities.

257.

Defendants would not have selected the same scope, timing, restrictions, losses of authority, public-records treatment, and public dissemination absent McLaughlin's protected speech and candidacy.

258.

Even if DCSO would have investigated portions of the Trader Lane matter, Defendants imposed additional, different, and publicly damaging treatment because McLaughlin challenged Rupert for office.

**Rupert Is Individually Liable for Personally Directing and Setting the Retaliation in Motion**

259.

Rupert personally participated in and set the retaliation in motion by attempting to induce McLaughlin not to run; using or permitting employment authority against him after he refused; hiring the investigator; approving or setting in motion the leave and investigative process; retaining final disciplinary authority; and authorizing, approving, or ratifying the official dissemination of the matter.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

260.

The right of a non-policymaking sheriff's lieutenant to campaign against the incumbent sheriff and express political views without retaliatory employment action was clearly established before these events.

261.

Rupert acted intentionally and with reckless or callous indifference to McLaughlin's federally protected rights. The County's own rules, *Kozowski*, and McLaughlin's 2024 written notice placed him on specific notice of the constitutional risk.

**Deschutes County Is Liable for the Official Decisions of Its Final Policymakers**

262.

For the particular DCSO subjects that caused the injury, Rupert possessed final policymaking authority under Oregon law, County Personnel Rule 4.080, DCSO Policy 2.02, and the County's actual allocation of authority.

263.

Rupert exercised that authority in his official capacity by making, directing, or approving the decisions concerning McLaughlin's work organization, authority and access, administrative leave, internal investigation, discipline, and DCSO release of internal-investigation information.

264.

Those final official decisions directly caused the adverse employment, investigative, communications, professional, and electoral injuries pleaded above and were moving forces behind the First Amendment violation.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

265.

For public-records determinations outside Rupert's final authority, the County acted through the official or officials designated to make final exemption, public-interest, legal-review, and production decisions. Those officials issued or approved the candidate-specific production after knowing the facts pleaded above, and that official decision caused the challenged publication and resulting harm.

**Deschutes County Is Alternatively Liable for Final-Policymaker Ratification**

266.

To the extent a subordinate initially selected or carried out a challenged action, the final policymaker with authority over that action knew the material facts and specifically and deliberately approved both the action and its campaign-linked basis.

267.

That approval included Rupert's authorization of internal-investigation disclosure under Policy 3.70 and the final County records decisionmaker's approval of the written, candidate-specific public-records determination and production.

268.

The ratified decisions directly caused the constitutional injury and resulting damages. County liability is not based on mere employment of a wrongdoer, passive failure to investigate, or respondeat superior.



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

269.

The County's written policies are not alleged to be facially unconstitutional. Their protections and Defendants' departures from them are evidence of notice, motive, pretext, selective enforcement, and the character of the final decisions that caused the violation.

270.

McLaughlin suffered the employment, professional, reputational, financial, emotional, associational, and electoral injuries described above as a direct and foreseeable result.

271.

McLaughlin is entitled to compensatory and nominal damages, punitive damages against Rupert if proved, declaratory relief, equitable relief, attorney fees, costs, and all other relief allowed by law. He does not seek punitive damages against Deschutes County.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and grant the following relief:

a) A declaration that Defendants violated McLaughlin's First Amendment rights;

b) Preliminary and permanent injunctive relief narrowly prohibiting further retaliation and requiring neutral, nonretaliatory decision-making;

c) Restoration of duties, access, participation, employment status, pay, benefits, and opportunities lost because of unconstitutional retaliation, as proved and legally available;

d) Compensatory damages in an amount determined at trial;

e) Nominal damages;



**EMPLOYMENT LAW PROFESSIONALS**
20015 SW Pacific Hwy., Suite 221
Sherwood, Oregon 97140
(503) 822-5340 – Fax (503) 433-1404

f) Punitive damages against Rupert in his individual capacity only, if proved;

g) Prejudgment and post-judgment interest as allowed by law;

h) Reasonable attorney fees under 42 U.S.C. § 1988 and other applicable law;

i) Taxable costs; and

j) Such other legal or equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

DATED this 21st day of October, 2026

Respectfully submitted,

EMPLOYMENT LAW PROFESSIONALS
NORTHWEST LLC
By: /s/ Randy J. Harvey
Randy J. Harvey, OSB No. 116714
randy@elpnw.com
20015 SW Pacific Hwy., Suite 221
Sherwood, OR 97140
Telephone: (503) 822-5340
Facsimile: (503) 433-1404

Attorney for Plaintiff James McLaughlin

Randy J. Harvey, Trial Attorney for Case